IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 23-16-4 |
| SUNIL PHILIP, *et al*, | : | |

**MEMORANDUM**

**Schmehl, J.**   /s/JLS                                                                               November 8, 2024

Before the Court is the partial motion to dismiss of Defendant, Sunil Philip, in which he seeks dismissal of Counts 1 and 25 of the Indictment against him. The government has opposed the motion, and argument was held.

I. **STATEMENT OF FACTS**

Pursuant to a 42-count indictment, a grand jury charged twelve different defendants with a variety of crimes. Defendant Sunil Philip ("Philip") filed a partial motion to dismiss, seeking to dismiss two of the six counts against him. Specifically, Philip attacks Count 1 charging him with RICO conspiracy and Count 25 charging him with money laundering conspiracy. Philip argues that even if every fact in the Indictment is taken as true, it only describes lawful conduct that Philip would have engaged in as an outside accountant to the Savani Group and the Savani brothers. Philip claims that his conduct could only be unlawful if there was some allegation that he undertook the actions alleged in the Indictment with an awareness that the Savani Group was operating as a fraudulent business enterprise.

II. **STANDARD OF REVIEW**

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense ... and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have." *United States v. Stansfield*, 171 F.3d 806, 812 (3d Cir. 1999)

6

(quotations and citations omitted). An indictment is sufficient under Rule 7 if it: (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007), *quoting United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007). "In considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)) (alterations in original).

### III.  DISCUSSION

First, Philip argues that Count 1 of the Indictment fails to state a RICO conspiracy offense against him. (ECF No. 326, pp. 5-14.) Specifically, Count 1 of the Indictment alleges that "[f]rom in or about February 2009 through in or about November 2021," Philip conspired with the Savani brothers and Defendants Dhyllon and Radiomak to participate directly or indirectly in the conduct of a racketeering enterprise through a pattern of five categories of racketeering activities: 1) a visa fraud scheme; 2) a healthcare wire fraud scheme; 3) a money laundering scheme in violation of 18 USC § 1956; 4) a money laundering scheme in violation of 18 USC § 1957; and 5) an Osseolink mail fraud scheme. Philip addresses each of these categories of racketeering activity and sets forth why he believes the RICO conspiracy charge against him should be dismissed. I will analyze each category below.

As to the visa fraud and Osseolink mail fraud schemes, Philip argues that his name is not mentioned in the paragraphs setting forth the visa fraud and Osseolink mail fraud allegations, he is not alleged to have had any role in the overt acts pertaining to those alleged schemes, and he is not charged or even referenced in any of the substantive counts relating to the visa fraud and

Osseolink mail frauds. Accordingly, Philip argues that there are no factual allegations in the Indictment from which to infer that he joined a conspiracy knowing of its objective, that the Indictment merely alleged the essential terms of the statute without any specific facts.

As for the healthcare wire fraud scheme, Philip argues that the only mention of him is in paragraph 70, where it is alleged that he "opened companies and prepared tax returns for entities involved in the scheme." (ECF No. 1, ¶ 70.) Philip claims that opening companies and preparing tax returns is not unlawful, and that the Government must allege specific facts that show Philip had knowledge and intent to further the healthcare wire fraud, and there are no such allegations in the Indictment. (ECF No. 326, p. 8.)

Regarding the money laundering conspiracy, Philip is mentioned in two paragraphs which describe the money laundering scheme, paragraphs 88 and 95. These paragraphs allege that Philip registered, opened and controlled numerous entities and more than 300 bank accounts at three different banks, and also that Philip incorporated United Dentistry, which did not conduct any business, had no employees and did not have physical office space. (ECF No. 1, ¶¶ 88, 95.) As with the allegations regarding the healthcare wire fraud scheme, Philip alleges that his actions in opening entities and accounts as set forth in the Indictment is not unlawful, and that his actions could only be unlawful if he had some reason to know that the Savani Group businesses were committing fraud. (ECF No. 326, p. 11.)

Lastly, as to the tax fraud conspiracy, Philip admits that the Indictment sets forth specific allegations regarding his participation in a tax fraud scheme based on the misclassification of personal expenses as business expenses. However, Philip argues that at most, the Indictment alleges that he agreed to commit the predicate offense of tax fraud conspiracy but fails to allege that he agreed to further the interests of a RICO enterprise. Again, Philip argues that the Indictment needed to set forth specific facts from which it could be inferred that he knew the

6

"general nature of the enterprise" and knew that the "enterprise extended beyond his individual role." (ECF No. 326, p. 13.)

As to Philip's objection to Count 25 of the Indictment, he argues that it fails to state a money laundering conspiracy against him because it does not allege that Philip had any knowledge that the funds being moved through various bank accounts were anything other than lawful earnings of the Savani Group business. (ECF No. 326, p. 16.) Philip claims that the money laundering statute requires facts that could support an inference that he undertook the conduct alleged in Count 25 with knowledge that the proceeds were derived from criminal activity. In response to all of Philip's arguments, the Government argues that the Indictment sufficiently alleges both a RICO conspiracy and a money laundering conspiracy with sufficient factual specificity.

An "indictment is sufficient when it (1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. John-Baptiste*, 747 F.3d 186, 195 (3d Cir.2014) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962) and *Hamling v. United States*, 418 U.S. 87, 117, (1974) (quotations omitted)). An indictment must allege more than the essential elements of the offense, but "[n]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir.2012) (internal citations omitted). "The specificity required for an indictment to have sufficient factual orientation ... is not particularly onerous." *John-Baptiste*, 747 F.3d at 196 (internal quotations omitted). In *John–Baptiste,* an indictment charging racketeering extortion among other crimes did not identify the alleged victims, although

6

it "could easily have" done so, but the indictment was sufficiently specific because it "adequately specified the period in which the alleged crimes occurred and set forth enough specificity about the crimes charged to protect against" a subsequent prosecution. 747 F.3d at 196.

As I will discuss below, I find that the Indictment provides "sufficient factual orientation" to allow Philip to prepare his defense and invoke double jeopardy. Accordingly, his partial Motion to Dismiss will be denied.

First, as to Philip's argument that the visa fraud scheme and the Osseolink mail fraud scheme predicate acts must be dismissed because he is not mentioned in the Indictment with regard to either of those schemes, this argument must fail. One must read the Indictment as a whole, and in doing so it clearly describes multiple schemes, some of which Philip was involved with, that comprise RICO predicate acts. It is irrelevant that Philip is not mentioned by name in the sections addressing the visa fraud and Osseolink mail fraud, as a defendant in a RICO conspiracy must simply "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Philip and his co-conspirators did not need to "agree to commit or facilitate each and every part" of the conspiracy; rather, they needed to "agree to pursue the same criminal objective and divide up the work, yet each [be] responsible for the acts of the others." *U.S. v. Fattah*, 914 F.3d 112, 164 (3d Cir. 2019). It is not necessary for the Government to plead in the Indictment that Philip was involved with every predicate act. It was sufficient to plead that Philip "knowingly and intentionally" conspired with others to further the endeavors of the Savani Group enterprise, which the Government did in the Indictment. (ECF No. 1, ¶ 15.)

Next, as to Philip's arguments regarding the health care wire fraud scheme and the money laundering scheme, he argues that his actions in opening entities and bank accounts and

6

filing tax returns were not unlawful. In setting forth this argument, Philip isolates single paragraphs of the Indictment and claims they do not allege any criminal wrongdoing. However, when read as a whole, the Indictment clearly describes Philip's role in the racketeering enterprise as an outside accountant for the enterprise and a personal accountant for the three leaders of the enterprise, as well as describing his unlawful acts. (ECF No. 1, ¶ 8.) The Indictment alleges that as the outside accountant in the health care wire fraud scheme, Philip "opened companies and prepared tax returns for entities involved in the scheme at the direction of Arun Savani..." (*Id*., ¶ 70.) As for the money laundering scheme, the Indictment alleges that Philip, "in furtherance" of that scheme, at the direction of Bhaskar Savani, registered, opened and controlled numerous entities and more than 300 bank accounts. (*Id*., ¶ 88) It also alleges that he "incorporated United Dentistry in the name of Person # 3," but "United Dentistry did not conduct any business, had no employees, and did not have a physical office space. (*Id*., ¶ 95.) These allegations are sufficient to show that Philip was not just a typical accountant blindly performing basic accounting work for his clients. Rather, the Indictment sufficiently alleges Philip's participation in unlawful actions with regard to opening numerous questionable entities and preparing fraudulent tax returns.

      As to the tax wire fraud scheme, Philip argues that the indictment alleges that he agreed to commit the predicate offense of tax fraud conspiracy by preparing fraudulent tax returns but fails to allege that he agreed to further the interests of a RICO enterprise. As alleged in the Indictment, Philip "knowingly and intentionally" conspired "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity…" (ECF No. 1, ¶ 15.) Reading the indictment as a whole, the Government clearly alleges that Philip furthered the interests of the Savani Group enterprise by preparing fraudulent tax returns for Savani Group businesses and fraudulent personal returns for the leaders of the

enterprise. (*Id*., ¶¶ 102-114.) The Indictment specifically alleges that Philip devised and executed a scheme to defraud the U.S. Treasury by submitting fraudulent personal tax returns through the IRS. (Id., ¶102.) It also clearly alleges that Philip paid numerous personal expenses of Bhaskar, Arun and Niranjan Savani with business funds, failed to report those funds as income on their personal tax returns, and fraudulently expensed those personal expenses through Savani Group companies as business expenses. (ECF No. 1, ¶ 103.) Philip also kept QuickBooks records for the companies using bank statements and Excel spreadsheets provided to him by Arun Savani and others which showed numerous intercompany transfers of money every month. Further, the spreadsheets tracked personal expenses of defendants that were expensed through the Savani businesses rather than showing business expenses. (*Id*., ¶ 110.) Moreover, Philip is alleged to have used the bank statements and Excel spreadsheets to categorize certain personal expenses as false business expenses in the corporate QuickBooks records. (*Id*., ¶111-112.) Lastly, the Indictment sets forth four different overt acts that Philip himself personally participated in. The Indictment is quite thorough in setting forth the requisite facts as to Philip's agreement to further a RICO enterprise.

      Regarding Philip's objection to Count 25 of the Indictment for money laundering conspiracy, he claims that the indictment fails to allege that he had the requisite knowledge that the proceeds being laundered were derived from unlawful activity. However, reviewing all facts alleged in the indictment and taking them as true, there is more than sufficient factual orientation to support Philip's knowledge that the laundered money was derived from funds generated by fraudulently obtained Medicaid contracts. Count 25 specifically alleges that Philip conspired "knowingly and intentionally" with the others to commit offenses and goes on to state that he "knew that the property involved in the financial transactions represented the proceeds of some

6

form of unlawful activity," and "knowingly" engaged in financial transactions through a financial institution of criminally derived property, "such property having been derived from a specified unlawful activity." Further, the Indictment sets forth, as discussed above, how Philip opened numerous entities and bank accounts, incorporated United Dentistry despite that company having no employees or physical location and conducting no business. (ECF No. 1, ¶ 86-101.) A review of the Indictment at paragraphs 86-101 shows sufficient factual detail as to the money laundering scheme and Philip's knowledge that the proceeds being laundered were derived from unlawful activity.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss the Indictment will be denied. An appropriate order follows.